United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATHANIEL HOSEA, | CASE NO. 5:11-cv-02892 EJD |
| Plaintiff(s), | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| MICHAEL B. DONLEY, Secretary of the Department of the Air Force, | [Docket Item No(s). 111] |
| Defendant(s). | |

In this employment action brought by Plaintiff Nathaniel Hosea ("Plaintiff"), presently before the court is a Motion for Summary Judgment filed by Defendant Michael B. Donley in his capacity as Secretary of the Department of the Air Force ("Defendant"). See Docket Item No. 111. The court previously found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and vacated the associated hearing date.

Federal jurisdiction arises pursuant to 28 U.S.C. §§ 1331. The court has carefully reviewed the moving, opposing and reply papers filed by the parties.[1] For the reasons explained below, Defendant's motion will be granted.

---

[1] Pursuant to Civil Local Rule 7-3, Plaintiff's opposition this motion should have been filed and served no later than November 1, 2012. Plaintiff, however, did not file the opposition until November 8, 2012. See Docket Item No. 127. The court has considered Plaintiff's opposition despite the untimely filing.

1
Case No. 5:11-cv-02892 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. BACKGROUND

Facts relevant to this motion are referenced in this section as well as where appropriate in the legal discussion. Plaintiff is African-American and commenced a period of probationary employment as a security guard at Onizuka Air Force Station ("Onizuka") on December 24, 2009. See Compl., Docket Item No. 3, at ¶ 7 (mislabeled as ¶ 6); Def.'s Mot., Teresi Decl. at ¶ 11, Ex. 5. While employed at Onizuka, Plaintiff's first level supervisor was Timothy Teresi ("Teresi"), and his second level supervisor was Alvin McCormick ("McCormick"). See Def.'s Mot., Benvenuto Decl. at ¶ 5. McCormick reported to Captain James Benvenuto ("Benvenuto"). Id. Benvenuto reported to Colonel Robert J. Pavelko ("Pavelko"), the base commander at Onizuka. Id.; Pavelko Decl. at ¶ 1.

Critical to this motion are events that occurred on July 7, 2010, and on the days that followed. On July 7th, Plaintiff arrived before his shift to submit employment paperwork related to Onizuka's closing. See Compl., at ¶ 9. Plaintiff parked his personal vehicle in an area outside the main gate. Id. The security guard on duty at the time, Michael Olive ("Olive"), told Plaintiff to move the vehicle. Id. at ¶¶ 10, 11. Plaintiff did not comply and a verbal incident between Plaintiff and Olive ensued.[2] Id. Plaintiff eventually left Onizuka without starting his shift. Id. at ¶ 12.

Olive reported the incident with Plaintiff to Melony Whitecloud ("Whitecloud"), the Security Guard Dayshift Supervisor. See Def.'s Mot., Exs. 13-15. Plaintiff also placed at least two telephone calls to Whitecloud with regard to the incident after leaving Onizuka. See Compl., at ¶¶ 13, 14. Whitecloud reported that Plaintiff spoke to her in an "irate" tone. See Def.'s Mot., at Ex. 13.

After learning of the incident between Plaintiff and Olive, Benvenuto discussed the matter with McCormick and Pavelko. Id., Benvenuto Decl. at ¶ 6. Benvenuto determined that Plaintiff should not be authorized to carry a firearm until further assessment and sent an e-mail to that effect to supervisory staff, including Whitecloud. Id. at Ex. 12. Pavelko eventually issued a formal firearm restriction regarding Plaintiff. Id. at Ex. 9.

---

[2] The court understands the apparent factual dispute as to the details of the incident between Plaintiff and Olive. But aside from Olive's instruction to move the vehicle and Plaintiff's subsequent lack of compliance, the details are not material to this motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (holding that on summary judgment, "factual disputes that are irrelevant or unnecessary will not be counted").

1  On July, 9, 2010, Plaintiff told Teresi during a telephone conversation that he would not
2  return to work until his "demotion" was rescinded, that he would be speaking with the Equal
3  Employment Opportunity Commission ("EEOC"), and that he would see a doctor for workers'
4  compensation. Id., Teresi Decl. at ¶¶ 2, 7, Ex. 2. Plaintiff was granted two days of annual leave. Id.

On July 11, 2010, Plaintiff called Teresi again to discuss the submission of workers' compensation paperwork. Id., Teresi Decl. at ¶ 8, Ex. 3. During this conversation, Teresi told Plaintiff that he should report to work the next day because his period of annual leave had expired. Id. Plaintiff told Teresi he would not return to work and also stated that Whitecloud "must pay" for her conduct toward Plaintiff. Id. at Ex. 22. When Plaintiff did not return to work on July 12th, Teresi called Plaintiff, who confirmed he would not return to work. Id., Teresi Decl. at ¶ 9, Ex. 4. During that conversation, Plaintiff also referenced a widely-publicized shooting incident at another military installation involving Major Malik Nadal Hasan. Id.

Recognizing Plaintiff's reference to the Hasan incident and remembering that Plaintiff kept firearms in his vehicle, Teresi immediately informed McCormick of Plaintiff's statement. Id. McCormick in turn informed Benvenuto and Pavelko. Id., Pavelko Decl. at ¶ 6; Benvenuto Decl. at ¶¶ 5, 8. In response, Pavelko issued an order banning Plaintiff from entering Onizuka. Id., Pavelko Decl. at ¶ 7, Ex. 10.

On July 14, 2010, Plaintiff was scheduled to submit workers' compensation paperwork. See Compl., at ¶¶ 30, 31. When Plaintiff arrived at Onizuka, he was met at the main gate by McCormick, Teresi and police officers from the Sunnyvale Police Department. Id. at ¶ 32. McCormick presented Plaintiff with the order banning him from the base. See Def.'s Mot., Teresi Decl. at ¶ 10.

On July 26, 2010, Teresi sent Plaintiff a notice informing him that his employment at Onizuka was terminated due to the events that occurred from July 7th to July 12, 2010. Id., Teresi Decl. at ¶ 11, Ex. 5.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a);

3
Case No. 5:11-cv-02892 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324.  The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324.  However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment.  See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).  Instead, the non-moving party must come forward with admissible evidence to satisfy the burden.  Fed. R. Civ. P. 56(c); see also Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).[3]

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991).  Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

### III.   DISCUSSION

**A.   Disparate Treatment Based on Race**

In the first cause of action entitled "Race Discrimination and Denial of Employment

---

[3] The court understands that Plaintiff is not represented by an attorney and has therefore allotted Plaintiff the deference appropriate for those individuals proceeding *in pro se.*  As it must, the court has liberally construed Plaintiff's written submissions, which includes Plaintiff's opposition to this motion.  See Abassi v. Immigration & Naturalization Serv., 305 F.3d 1028, 1032 (9th Cir. 2002).  However, liberal construction is not a substitute for Plaintiff's burden of production in response to a motion for summary judgment.  See Bias v. Moynihan, 508 F.3d 1212, 1218-19 (9th Cir. 2007) ("A district court does not have a duty to search for evidence that would create a factual dispute . . . .  A district court lacks the power to act as a party's lawyer, even for pro se litigants.").

Opportunities," Plaintiff alleges that Defendant violated Title VII when it discriminated against him because of his race by taking particular adverse actions and ultimately terminating his employment. In other words, Plaintiff alleges that Defendant treated him differently than other similarly situated employees - a claim of disparate treatment.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "In responding to a summary judgment motion in a Title VII disparate treatment case, a plaintiff may produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant's decision, or alternatively may establish a prima facie case under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005).[4]

In order to establish a prima facie case of disparate treatment, a plaintiff must show that: (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he was subject to an adverse employment action; and (4) similarly-situated individuals outside his protected class were treated more favorably. See id.

At summary judgment, the degree of proof necessary to establish a prima facie case is "minimal and does not even need to rise to the level of a preponderance of the evidence." Id. But failure to establish any essential element of the case is grounds for summary judgment. Celotex, 477 U.S. at 322. Since it is plaintiff's burden to demonstrate a prima facie case, defendant need only show that there is "an absence of evidence to support [plaintiff's] case." Id. at 323.

If plaintiff satisfactorily demonstrates a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its conduct. Tex. Dep't of Cmty. Affairs v.

---

[4] The court will proceed to the McDonnell Douglas analysis because Plaintiff has not provided direct evidence sufficient to support a prima facie claim of disparate treatment. "Direct evidence is 'evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption.'" Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003) (quoting Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998)).

Burdine, 450 U.S. 248 (1981).  If defendant can do so, the burden then shifts back to plaintiff to show that the reason is a pretext for discrimination.  Id.

### 1. Prima-Facie Case

Defendant does not dispute that Plaintiff can satisfy the first three elements of a prima facie case.  Indeed, Defendant has admitted in responses to Requests for Admission and Interrogatories that Plaintiff is African-American, that Plaintiff was qualified for his position and received a performance rating of "satisfactory," and that Plaintiff was terminated from employment.  See Pl.'s Opp'n, at Disc. Exs.  Defendant does argue, however, that Plaintiff has not established the fourth element.  The court disagrees.

"[I]ndividuals are similarly situated when they have similar jobs and display similar conduct."  Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003).  The employees' roles need not be identical; similarly situated means "similar in all material respects."  Hawn v. Executive Jet Mgmt., Inc., 615 F.3d 1151, 1157 (9th Cir. 2010) (quoting Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1125 (9th Cir. 2009)); Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006) ("In order to show that the 'employees' allegedly receiving more favorable treatment are similarly situated (the fourth element necessary to establish a prima facie case under Title VII), the individuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects.").

Here, the evidence shows that another employee, namely Olive, was similarly-situated to Plaintiff.  Both Olive and Plaintiff were security guards at Onizuka with same civil service pay scale ranking of GS-06.  See Def.'s Mot., at Ex. 13; see also Compl., at ¶¶ 9, 10.  The evidence also shows that Olive is Caucasian and, despite also being involved in the incident at the main gate, Olive was not treated in the same manner as Plaintiff.  He was not reprimanded in the same way as Plaintiff, was not restricted from carrying a firearm, and was not terminated from employment.[5]  Considering

---

[5] In response to Request for Admission No. 15, Defendant admitted that Olive is Caucasian. Defendant also admitted in response to Request for Admission No. 36 that Olive was permitted to carry a firearm in response to Request for Admission No. 36.  In response to Interrogatory 14, Defendant stated that Pavelko did not engage in an investigation of Olive.  See Pl.'s Opp'n., at Disc. Exs.

6
Case No. 5:11-cv-02892 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's initial burden requires only the production of a de minimis amount of evidence (Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d at 1037), as well as recognizing this court's obligation to view the evidence in the light most favorable to Plaintiff (T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987)), the court finds Plaintiff has demonstrated that a similarly-situated individual outside of his protected class was treated more favorably. This determination, coupled with the findings on the first three elements, means that Plaintiff has established a prima facie case of disparate treatment based on race.[6]

### 2. Non-Discriminatory Reason

Defendant argues that, even if Plaintiff can establish a prima facie case of disparate treatment, Defendant has nonetheless proffered a legitimate, non-discriminatory reason for taking adverse actions and eventually terminating Plaintiff's employment. Defendant further argues that Plaintiff has not shown that Defendant's proffered reasons are pretext. On these points, the court agrees with Defendant.

The admissible evidence establishes that Plaintiff was involved in an incident with Olive, who was the on-duty security guard at the time Plaintiff entered Onizuka. See Compl., at ¶ 10. During this incident, Plaintiff disobeyed Olive's directive to move his vehicle from where it was parked outside of the main gate.[7] This initial event resulted in the firearm restriction issued by Pavelko. See Def.'s Mot., Pavelko Decl. at ¶ 5, Ex. 9.

---

[6] Relying on Vasquez, Defendant argues that Plaintiff and Olive are not similarly-situated because Olive did not engage in the same problematic conduct as Plaintiff. In Vasquez, however, the court's consideration of dissimilar employee conduct arose within the analysis of "pretext" rather than within the "similarly-situated" analysis of a *prima facie* case. Vasquez, 349 F.3d at 641 ("Vasquez's claim fails because, even assuming (which we do not decide) that he can make out a prima facie case under the McDonnell Douglas framework, he cannot establish that the County's articulated non-discriminatory reason for his transfer is pretextual."). This court will do the same.

[7] To the extent this fact is not established by the allegations in the Complaint itself (¶¶ 10, 11), it is nonetheless established by other admissible evidence. Since Plaintiff did not respond to Defendant's Request for Admissions, he has admitted the truth of all matters contained in the requests. Fed. R. Civ. P. 36(a)(3); Def.'s Mot., at Exs. 23, 24. "Unanswered requests for admissions may be relied on as the basis for granting summary judgment." Conlon v. United States, 474 F.3d 616, 621 (9th Cir. 2007) (citing O'Campo v. Hardisty, 262 F.2d 621, 624 (9th Cir. 1958)). Thus, Plaintiff has admitted by failing to respond to Requests for Admissions Nos. 2 and 3 that he did not move his vehicle after an Onizuka security guard told him to move it on the date of the incident. See Def.'s Mot., at Ex. 22.

Thereafter, the evidence shows that Plaintiff made multiple telephone calls to Whitecloud after exiting Onizuka. See Compl., at ¶¶ 13-15. Plaintiff also told Teresi that Whitecloud "must pay," referenced a widely-publicized shooting incident at another military installation, and had guns in his car during the incident at the main gate. See Defs. Mot., at Ex. 22. This escalation in Plaintiff's conduct caused Benvenuto to recommend and Pavelko to issue the order banning Plaintiff from entering Onizuka as well as caused McCormick and Teresi to meet Plaintiff at the main gate with Sunnyvale police officers when Plaintiff returned to submit workers' compensation paperwork. See id., Pavelko Decl. at ¶¶ 6, 7, Teresi Decl. at ¶ 10, Benvenuto Decl. at ¶¶ 9, 10.

Finally, the evidence shows that Teresi decided to terminate Plaintiff's employment after considering Plaintiff's disobedience during the incident at the main together with his post-incident behavior. See id., Teresi Decl. at ¶ 11, Ex. 5, Pavelko Decl. at ¶ 8, Benvenuto Decl. at ¶ 7.

Based on the evidence described above, the court finds that Defendant has met its burden to articulate legitimate, non-discriminatory reasons for its actions and decisions concerning Plaintiff.

### 3. Pretext

The burden now shifts to Plaintiff to show that Defendant's non-discriminatory reasons are pretext. "A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." Vasquez, 349 F.3d at 641. When, as here, only circumstantial evidence of pretext is available, such evidence must be "specific" and "substantial." Wallis v. J.R. Simplot Co., 26 F.3d 855, 890 (9th Cir. 1994); see also Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998) (holding that a plaintiff "must produce evidence in addition to that which was sufficient for her prima facie case in order to rebut the defendant's showing" of non-discriminatory purpose).

A showing that Defendant treated other similarly-situated employees outside of Plaintiff's class more favorably "would be probative of pretext." See Vasquez, 349 F.3d at 641. Here, the court has found that Olive was treated differently than Plaintiff for the purpose of a prima facie case. That determination, however, is not probative of pretext because Olive and Plaintiff are not similarly-situated in all material aspects. Regardless of who was the aggressor during the incident at the main gate, Olive did not engage in the same conduct as Plaintiff. Specifically, the evidence does

not show that Olive disobeyed an order, made a threatening references or kept firearms in his vehicle.

Moreover, Plaintiff's other references to discriminatory motive are neither specific or substantial. The fact that Olive told Plaintiff to move his vehicle is not substantial in this context because Olive was not in Plaintiff's supervisory chain and was not authorized to make decisions concerning Plaintiff's employment. This is true even if no policy precluding parking outside the main gate was in effect. Similarly, Plaintiff's suggestion that only African-American employees would be ordered to move their vehicles as well as his allegation that individuals did not follow the proper chain of command are neither supported by specific evidence nor substantial since the weight of the evidence shows that the seriousness of Plaintiff's conduct ultimately led to the adverse employment consequences.

Furthermore, Whitecloud's alleged behavior toward Plaintiff - calling him "angry," referring to Plaintiff as a "suspect," failing to greet him, and looking down at his feet while shaking her head - is not substantial evidence of pretext since, like Olive, the evidence does not show that Whitecloud was responsible for any adverse employment decisions. In any event, the conduct and other behavior attributed to Whitecloud, even if true, would not itself cause a "rational factfinder to conclude that [Defendant's] action was discriminatory." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).

Having addressed the portions of Plaintiff's opposition which could support pretext, what largely remains is Plaintiff's unsupported claims of racial discrimination. That is not enough on summary judgment. See Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005) (holding "conclusory statements of bias do not carry the nonmoving party's burden in opposition to a motion for summary judgment"); see also Lucas v. Chi. Transit Auth., 367 F.3d 714, 726 (7th Cir. 2004) ("[C]onclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment."); Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) ("When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact."); Forsberg v. Pac. Nw. Bell Tel. Co., 840 F.2d 1409, 1419 (9th Cir. 1988) ("[P]urely conclusory allegations of alleged

discrimination, with no concrete, relevant particulars, will not bar summary judgment.").

Because Plaintiff has not met his burden to show that Defendant's non-discriminatory reasons are pretext, Defendant is entitled to summary judgment on the cause of action alleging disparate treatment based on race.

### B. Retaliation

Plaintiff alleges that Defendant terminated his employment in retaliation for reporting discrimination to his supervisor on July 7, 2010, requesting and then submitting workers' compensation forms on July 9th and July 14, 2010, and filing an informal EEOC complaint and participating in EEOC counseling on July 15th and July 21, 2010.[8]  See Compl., at ¶ 46.  Defendant argues that Plaintiff failed to establish a prima facie case of retaliation.  The court agrees.

To state a prima facie case of retaliation, Plaintiff must show (1) he engaged in a protected activity, (2) he was subject to an adverse employment action; and (3) a causal link between the two exists.  Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000).  If Plaintiff meets this burden, Defendant must put forth a legitimate, non-discriminatory reason for the adverse employment action.  Id.  If that is accomplished, Plaintiff must then show that the stated reason is pretext.  Id.

Here, Plaintiff has not established a causal link between his cited activities and the adverse employment actions undertaken by Defendant.  Although there is close proximity in time between Defendant's actions and Plaintiff's activities, that is not the only relevant consideration.  See Cosaltzer v. City of Salem, 320 F.3d 968, 977-78 (9th Cir. 2003).  "Whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances."  Id. at 978.  These circumstances include Plaintiff's conduct during and after the incident at the main gate, as already described.  In addition, none of the admissible evidence supports Plaintiff's allegation that the adverse employment actions were motivated either by Plaintiff's complaints of discrimination or his application for workers' compensation benefits.  See Def.'s Mot., Teresi Decl., at ¶ 11, Ex. 5.  Accordingly, the court finds

---

[8] Plaintiff also alleges retaliation based on him filing an formal complaint with the EEOC on August 3, 2010.  That filing occurred after Plaintiff was terminated, however.

that Plaintiff has not established a prima facie case of retaliation.

In any event, Plaintiff has not raised a genuine issue of material fact even if the court were to proceed to the burden-shifting analysis. Defendant has proffered legitimate, non-discriminatory reasons for its actions, and there is no evidence in the record to suggest this reason is pretext. The court will therefore grant Defendant's motion for summary judgment as to the retaliation claim.

### C. Disability Discrimination

To establish a prima facie case of disability discrimination, Plaintiff must prove three elements: (1) he was disabled; (2) he was a qualified individual able to perform the essential functions of his job, either with or without reasonable accommodations; and (3) his employer acted adversely against him solely because of his disability. See Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1045 (9th Cir. 1999).

Looking at the evidence, Plaintiff has not established a prima facie case of disability discrimination. On the issue of whether he was disabled, Plaintiff must show "a physical or mental impairment that substantially limits one or more of the major life activities of" a person. 42 U.S.C. § 12102(2)(A); McLean v. Runyon, 222 F.3d 1150, 1153 (9th Cir. 2000) (holding that the standards provided by the Americans with Disabilities Act apply to claims under the Rehabilitation Act). The medical records attached to the Opposition brief indicate that the Plaintiff's doctors found him only temporarily unable to work - from July 13, 2010, to September 25, 2010 - and there is no substantial evidence that Plaintiff experienced long-term or permanent impairment due to work-related stress. Temporary psychological impairment without evidence of residual effects is not a disability in this context. Sanders v. Arneson Prods., 91 F.3d 1351, 1354 (9th Cir. 1996). Furthermore, for reasons similar to those already explained, Plaintiff has not produced evidence suggesting that Defendant acted solely because of his disability.

Because Plaintiff did not produce evidence to establish a prima facie case, the court will grant Defendant's motion for summary judgment as to claim for disability discrimination.

### D. Hostile Work Environment

A claim of hostile work environment based on race requires Plaintiff show the following elements: (1) that he was subjected to verbal or physical conduct of a racial nature; (2) that the

1  conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the
2  conditions of the plaintiff's employment and create an abusive work environment." Vasquez, 349
3  F.3d at 642.

4      Having reviewed the Complaint and Plaintiff's opposition, much of what Plaintiff cites in
5  support of his claim is not relevant since it did not occur during Plaintiff's period of employment. To
6  the extent he relies on the statements and conduct attributed to Whitecloud, such conduct could not
7  "subjectively and objectively be perceived as abusive." Id. Moreover, there is no evidence that
8  Plaintiff experienced harassment that was either frequent, severe or interfered with his work
9  performance. See id. Accordingly, Plaintiff has not established a prima facie case nor has he
10 identified a triable issue of fact on a claim for hostile work environment. The court will therefore
11 grant Defendant's motion for summary judgment as to this claim.

### IV.   ORDER

Based on the foregoing, Defendant's Motion for Summary Judgment (Docket Item No. 111) is GRANTED in its entirety. Since this result essentially resolves this action, judgment will be entered in favor of Defendant.

All other matters and all other hearings, including the pretrial conference and trial dates, are TERMINATED and VACATED. The clerk shall close this file.

**IT IS SO ORDERED.**

Dated: January 11, 2013

                          EDWARD J. DAVILA
                          United States District Judge